EMELINE LANGFORD

v.

JOHN GREIRSON.

1. HUSBAND AND WIFE—WIFE'S PROPERTY.—The occupancy and culti-vation in apparent control by the husband, of the wife's lands, where nothing appears to show his or her actual interest in them, will raise a presumption of tenancy in him, and consequent ownership of the crop, subject to her lien for a reasonable rent, but this is not conclusive upon her right to the crop, and is liable to be overcome by proof tending to show that his preformance of such labor is fairly consistent with her claim to the crop.

2. LABOR BY THE HUSBAND.—The law does not require that to establish and preserve the right of the wife to the labor of the husband, she should limit the amount to be performed, the act of 1874 expressly contemplates his labor for her as enuring to her benefit, without regard to its amount.

3. MINOR CHILDREN.—The father has no present valuable property in the future labor of a minor child, and does not by emancipating him withdraw from his creditors any property or fund to which they are legally entitled for the satisfaction of their claims.

APPEAL from the Circuit Court of Whiteside county; the Hon. JOHN V. EUSTACE, Judge, presiding. Opinion filed January 20, 1880.

Mr. D. S. EFNER and Mr. O. F. WOODRUFF, for appellant; as to the right of a married woman to the crops grown upon her land, cited Garvin v. Gæbe, 72 Ill. 447; Bongard v. Core, 82 Ill. 19; Dean v. Bailey, 50 Ill. 481; Haight v. McVeagh, 69 Ill. 624; Partridge v. Arnold, 73 Ill. 600; Patten v. Patten,

75 Ill. 446; Primmer v. Clabaugh, 78 Ill. 94; Blood v. Barnes, 79 Ill. 437; Rev. Stat. 1874, Ch. 68, §§ 8, 9, 15.

As to the right of a father to the earnings of a minor child: 1 Black. Com. *448; 2 Kent's Com. *191; Mayer v. Mayer, 65 Ill. 256.

The reason for the common law rule as to minors having ceased to exist, the rule is at an end: Rev. Stat. 1874, 577; Martin v. Robson, 65 Ill. 129.

Mr. F. D. Ramsay, for appellee; in support of the decision in the court below, cited Wortman v. Price, 47 Ill. 22; Elijah v. Taylor, 37 Ill. 247; Hockett v. Bailey, 86 Ill. 75; Wilson v. Loomis, 55 Ill. 352; Patton v. Gates, 67 Ill. 164.

As to the right of a father to the earnings of a minor son: 2 Kent's Com. * 189; Reeve's Domestic Relations, 283; Canover v. Cooper, 3 Barb. 117; Hillsborough v. Deering, 4 N. H. 95.

Pleasants, J.   This was replevin for a lot of wheat in granary, by a married woman, against a constable, and the issue was upon her alleged right of property.

Defendant justified the taking under an execution against Guilford Langford, her husband, issued July 22, 1878, on a judgment upon his promissory note, given with another which he had paid, for a team of horses.

She testified that the farm upon which the wheat was raised was hers.   How, or of whom, or when she acquired it, was not asked nor shown, but no question of her right to it is here made. Her husband and two minor sons, composing her family, had occupied it with her for twelve years, and together done all the work of its cultivation, except occasionally, as in harvest, when additional help was hired.   For the two or three years last preceding he had done only a little; but had always been a farmer, followed no other business, did the buying and selling principally, kept an account in his own name for repairs of implements used on it, and was charged in small amounts for dry goods, groceries and hardware for the family.   He had helped to sow the wheat in question and draw it to the bin.

It did not appear that he ever claimed to own the farm or its products, or any interest in either, nor was any direct proof made or offered touching his pecuniary circumstances.

Appellant and he together did the managing. She "dictated principally"—gave orders for the work, and paid the hired help. She testified that she also made purchases for the family and paid for all she got charged; that she never directed any to be charged to her husband nor knew that he had an account at the store; that she opposed his buying the team, and absolutely forbade his doing so for her; that she owned five work horses; that the seed which produced the wheat was hers, and her team did the work; that she clothed the boys, and that the means to pay for the groceries, etc., purchased for the use of the family and for the labor of the hired help were derived from the products of the farm. The defendant understood some time before he made the levy that she claimed to own the crops.

As to some of the particulars of her testimony, she was corroborated by other witnesses and contradicted as to none.

The facts above stated present in substance the whole case; on which the jury found a verdict for the defendant, and the court, refusing a new trial, entered judgment thereon; from which plaintiff appealed and assigns for error the giving and refusing of instructions and the overruling of her motion for a new trial.

On the part of the defendant, the court gave, among others, the following:

1st. "That though you may believe from the evidence in this case, that the farm on which the wheat in dispute was grown was owned by plaintiff, still if Guilford Langford, by himself and minor son or sons, raised and took care of the crops grown thereon, then the said crops grown on said farm would be liable to an execution against him."

3d. "That although you may believe from the evidence that the farm on which the wheat in question was raised, was in fact owned by Emeline Langford, still if you further believe from the evidence that Guilford Langford, her husband, was allowed by her to exercise full and complete authority over said farm; to buy and sell stock; to raise, sell and dispose of the crops

raised on said farm; to purchase in his own name property and stock to put on said farm, and to make bills at stores in his own name for articles used by the family, then she would be estopped from denying that Guilford Langford had an interest in the crop raised and grown on said farm under his supervision, and by the exertion of himself and minor son or sons."

These instructions should have been refused or materially modified.

The rule as declared without qualification in the first is too broad and absolute.   It appears, indeed, to be based upon the language of the opinion in Dean v. Bailey, 50 Ill. 484–5, in the course of which it was said:   "So, too, we should hold as we held in Elijah v. Taylor, 37 Ill. 249, if the husband by his personal labor raise a crop upon the land of his wife, it would be liable for his debts."

The case thus referred to was one in which the husband as plaintiff was asserting, without objection by the wife, his right to recover from the purchaser the price of the crop sold, and the court there held, that "where the husband, as the head of the family, occupies and cultivates the land of the wife, he must be considered as occupying it, with her consent, for the common benefit of the family, and the products of his toil upon such land are as much his property, notwithstanding the Act of 1861 as if he had occupied as a tenant land rented from some third person."   We apprehend that nothing more than this was intended by the language of approval in Dean v. Bailey, and that the extent of the doctrine is that his occupancy and cultivation in apparent control of her land, where nothing further appears to show his or her actual interest in them, will raise a presumption of tenancy in him and consequent ownership of the crop, subject to her lien for a reasonable rent.   Both of these cases expressly sustain it as a guard against the use of the statute to cover fraud by enabling him to obtain a credit to which he is not entitled; which implies the assumption by him of the appearance of ownership and also acquiescence by her therein, since her right could not be affected by his fraud to which she was not, by positive act or wrongful neglect, a party.

This is a different proposition from that laid down in the

instruction here considered. The mere fact that his labor upon her land raised the crops was not conclusive against her right to them under the Act of 1861. Whatever might be its force and effect with the jury as a circumstance to be considered by them in determining the question of property therein, it was liable to be overcome by proof of others, tending to show that his performance of such labor was fairly consistent with her claim. He might be her agent acting for her in good faith and in such manner as to deceive no one taking reasonable care to ascertain his relations to the subject. Dean v. Bailey, *supra;* Haight v. McVeagh, 69 Ill. 625; Garvin v. Gæbe, 72 Id. 447; Bongard v. Core, 82 Id. 19.

Nor do we think the Supreme Court ever intended to hold absolutely, as matter of law, that he could not apply his whole time, skill and labor to the cultivation of her land without subjecting its product to liability for his debts. Whose is the property in such cases is still a question of fact, to be determined in each by its own circumstances. The law no more requires that to establish and preserve her right she should limit the amount of his labor, than that she should prohibit it entirely and banish him from the premises; but the Act of 1874 expressly contemplates his labor for her as enuring to her benefit, without regard to its amount, by the provision that neither husband nor wife shall be entitled to recover any compensation for any labor performed or services rendered for the other, whether in the management of property or otherwise; R. S. 1874, Chap. 68, § 8, which would be but a mockery if his creditors could recover not only compensation for such labor but the entire fruit of it, upon her land.

So, as to that of the boys, he might have given it to her without legal wrong to his creditors. The father has no present valuable property in the future labor of a minor son, and does not, by emancipating him, withdraw from them any property or funds to which they are legally entitled for the satisfaction of their claims. Partridge v. Arnold, 73 Ill. 601.

The question, then, was whether in raising and taking care of the crop he and they were in good faith laboring for her. If so, it was her separate property and not liable for his debts, and

it was a question for the jury to determine upon all the facts proved.

The instruction was, therefore, erroneous.   Indeed, the Circuit Court, in some of those given for the plaintiff, declared the law very nearly as above set forth; but because they were liable to be regarded by the jury as contradictory rather than qualifying, and it is uncertain which controlled their finding, they could not cure the error of the one under consideration.

The other instruction for the defendant, above quoted, ought not to have been given, because some material elements of the hypothesis were wholly unsupported, and others fully disproved by the evidence, as sufficiently appears from the statement of the facts herein made.

For these reasons, the judgment is reversed and the cause remanded.

Reversed and remanded.